UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT SIMS,

                                    Plaintiff                      DECISION AND ORDER

-vs-
                                                                    05-CV-6122 CJS

CALVIN E. WEST, et al.,

                                    Defendants

_____

        This is an action pursuant to 42 U.S.C. § 1983.  The *pro se* plaintiff, a prison

inmate at Elmira Correctional Facility ("Elmira"), alleges that staff there are violating his

constitutional rights.  Now before the Court is a motion by plaintiff seeking injunctive

relief [#40].  For the reasons that follow, the application is granted in part and denied in

part.

BACKGROUND

        Plaintiff, who alleges that he has a "serious heart condition", seeks an injunction,

directing the medical staff at Elmira to "provide [him] with appropriate medical care."  In

that regard, plaintiff alleged that defendants were: 1) refusing to check his pulse prior to

providing him with his "daily Digoxin medication"; 2) writing false entries in his medical

record to avoid documenting that he has an abnormally slow pulse rate; 3) failing to

provide him with an appropriate low-sodium diet; 4) failing to provide him with anger

management treatment; and 5) placing him in a cell without an intercom to contact

medical staff.  Plaintiff alleged that all of these actions were retaliatory.

        In response to the application, defendants submitted an affidavit [#48] from

Floyd Fuller, R.N. ("Fuller"), a nurse at Elmira.  Fuller stated that plaintiff has been

prescribed a "low cholesterol diet and . . . prescribed Lipitor to lower his cholesterol." Fuller also stated that "since February 6, 2006, [plaintiff's] pulse has been taken prior to the administration of his medication", as plaintiff had requested.

Plaintiff filed a reply [#54] on April 7, 2006, in which he admitted that, at that time, defendants were providing him with a proper diet, and that he was no longer taking Digoxin.  However, he alleged, and the Court agreed, that defendants' response failed to address the other issues raised in his application for injunctive relief, such as his claim that his current cell placement was inappropriate, his claim that staff were making false entries in his medical record, and his claim that he was being denied anger management treatment.  Accordingly, the Court issued an Order [#55] directing defendants to "file and serve a supplemental response to plaintiff's application for injunctive relief [#40], which addresses the issues identified above."

Defendants subsequently filed a supplemental response.  Unfortunately, the response was not, in the Court's view, responsive to the issues raised by plaintiff.  More specifically, defendants filed an affidavit [#56] from Marijon Hopkins ("Hopkins"), the Nurse Administrator at Elmira, which did not address the issue of false entries in plaintiff's medical records or his request for anger management counseling.  As for plaintiff's complaint regarding his housing, Hopkins stated, in relevant part, that plaintiff had been admitted to the infirmary and held for observation on five occasions since November 2005, that he was subsequently discharged from the infirmary, and that "inmate patients house in cell blocks outside the infirmary who are unable to walk or are non-ambulatory are transported to the infirmary by wheel chair or other means when necessary."

2

Plaintiff's complaint regarding his housing, however, centered upon his concern that he would suffer a cardiac emergency and be unable to either call for help or receive prompt medical care.  As to that issue, it is undisputed that plaintiff has a heart condition which is so serious that he has been given an implantable cardioverter defibrillator, and for which he takes numerous medications.  He has also claimed to have difficulty breathing.  Moreover, he claimed that when he experienced chest pain, it could take an hour for him to be transported to the infirmary by corrections staff. (Pl. Aff. [#54], ¶ 8)

Consequently, the Court issued another Order [#81], which directed defendants to file a supplemental affidavit from a member of the medical staff at Elmira who was familiar with plaintiff's medical and psychiatric condition, which affidavit was to specifically address plaintiff's allegations.  The Court directed, for example, that defendants respond to plaintiff's contention that it was unsafe for him to be housed outside of the infirmary in a cell which did not contain an intercom or other emergency call device.

Defendants subsequently submitted an affidavit [#83] from John Alves, M.D. ("Alves"), the Director of Health Services at Elmira, dated November 17, 2006.  Alves indicated that he had reinstated plaintiff on Digoxin and had directed facility staff to take plaintiff's pulse prior to administering the drug.  Alves also stated that plaintiff was being housed at the Arnot Ogden Medical Center temporarily, and that upon his return to Elmira he would be placed in a cell in the prison's infirmary equipped with a working call intercom.  In response to plaintiff's allegation regarding falsified medical notes, Alves indicated that he had reviewed plaintiff's file and found no evidence of that.  Alves

3

further indicated that he had ordered that plaintiff receive a low-sodium diet.  Finally, Alves stated that plaintiff was "an active patient with the Office of Mental Health," but was not eligible to attend group anger management classes, because he was designated as being confined to Elmira's Segregated Housing Unit ("SHU").  Alves indicated, however, that plaintiff was eligible to receive "individual mental health counseling . . . to address anger management issues," but had "declined to avail himself" of such counseling.  In this regard, the Court understands Alves to mean that plaintiff is currently receiving counseling for certain issues, but not anger management specifically, out of choice.

Plaintiff thereafter filed an affidavit [#85], dated November 29, 2006, in response to Alves' submission.  Significantly, plaintiff acknowledged that he had been placed in the infirmary upon his return to Elmira, and that he had been placed back on Digoxin. Plaintiff reiterated that, in the past, medical staff had refused to take his pulse prior to administering Digoxin, though he did not specifically dispute that medical staff were currently taking his pulse prior to administering the drug.  In any event, the Court notes that it is undisputed in the record that plaintiff is capable of taking his own pulse prior to receiving the medication, but refuses to do so. (*See*, Exhibits to Plaintiff's Second Supplemental Declaration [#85]).  Plaintiff additionally indicated that on one occasion, November 27, 2006, the intercom in his infirmary cell was not working.  As for his complaint regarding his medical records, plaintiff reiterated his belief that defendants had falsified his medical records in the past, by covering up the fact that he had an abnormally slow pulse rate.  In support of this claim, plaintiff submitted copies of inmate grievance decisions from 2005  which quoted Alves as stating that plaintiff did not suffer

4

from a slow pulse.  Plaintiff also submitted certain medical charts, dating from 2003,

which showed that his pulse was below sixty beats per minute ("bpm") on numerous

occasions.  As to his complaint regarding anger management counseling, plaintiff

stated, in somewhat ambiguous terms, that "individual mental health counseling is not

available to [him] *to address anger management issues*," (emphasis added), and he

additionally stated that he takes "mental health medication" twice a day.  Finally, plaintiff

indicated that he had not received a low-sodium diet since June 2006, though he had

received a notice in November 2006 indicating that such a diet had been ordered for

him.

## ANALYSIS

The standard to be applied when considering an application for a preliminary

injunction is well settled:

> In most cases, a party seeking to obtain a preliminary injunction must
> establish that it will suffer irreparable harm in the absence of an injunction
> and demonstrate either (1) a likelihood of success on the merits or (2)
> sufficiently serious questions going to the merits to make them a fair
> ground for litigation and a balance of the hardships tipping decidedly in the
> movant's favor.

*Jolly v. Coughlin*,  76 F.3d 468, 473 (2d Cir. 1996) (citations and internal quotation marks

omitted).  Violation of a constitutional right is considered "irreparable harm." *See,*

*Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("In the context of a

motion for a preliminary injunction, violations of First Amendment rights are commonly

considered irreparable injuries.") (citation and internal quotation marks omitted).

Moreover,

> [a]n evidentiary hearing is not required when the relevant facts either are
> not in dispute or have been clearly demonstrated at prior stages of the

5

case, or when the disputed facts are amenable to complete resolution on a paper record.  However, the motion should not be resolved on the basis of affidavits which evince disputed issues of fact.

*Id*. (Citations and internal quotation marks omitted).

The standard to be applied to plaintiff's underlying claim, alleging an Eighth Amendment violation arising from denial of medical care, is also well settled:

In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs.  This standard incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.

Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's *serious* illness or injury resulting in the infliction of unnecessary pain and suffering.  Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care.  Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability.  An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)(citations and internal quotations omitted).  Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").  Similarly, negligence constituting medical

malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Based upon these applicable principles of law, the Court finds, at the outset, that an evidentiary hearing is not required in this case, since the motion can be resolved based upon the undisputed facts in the record.   Most significantly, it is undisputed that plaintiff is receiving medical care for his heart condition, and that before he receives Digoxin, he is either having his pulse taken or is able to take his own pulse.   Moreover, plaintiff is now being housed in the prison infirmary.  Accordingly, the Court finds that plaintiff's most serious complaints are now moot.

As for plaintiff's request for a low sodium diet, Alves indicates that the diet is necessary and that he has prescribed the diet for plaintiff.  Plaintiff, however, indicates that he has not received such a diet since June 1, 2006.  In any event, since Alves agrees that the diet is necessary, the Court understands defendant to have no objection to plaintiff's application in that regard.  Accordingly, the Court will direct defendants, to the extent that they are not already doing so, to provide plaintiff with a low sodium diet for as long as medically necessary.

As for plaintiff's request for anger management treatment, it appears that plaintiff is currently receiving mental health treatment, including individual counseling and medication.  To the extent that plaintiff is complaining because he is not receiving additional treatment specifically for anger management, the Court finds that his complaint is not of a constitutional magnitude.

The sole remaining issue concerns plaintiff's medical records, and in that regard it is unclear what injunctive relief plaintiff is seeking.  While plaintiff contends that it is potentially dangerous for him to receive Digoxin when his pulse rate is below sixty bpm,

and that medical staff have made false entries in his record to hide the fact that he has

an abnormally slow pulse rate, he has not identified any specific instance in which a

false reading was recorded in the medical record.  Moreover, plaintiff's medical records

contain numerous instances where his pulse was recorded as being below sixty bpm.

Liberally construing plaintiff's papers, it may be that he is claiming that Alves'

statements, indicating that plaintiff did not have an abnormally slow pulse rate, made in

2005, were false because they were inconsistent with plaintiff's medical records from

2003.

However, the Court finds that plaintiff is not entitled to injunctive relief, for several

reasons.  First, the issue of plaintiff's medical records pertains only to the taking of his

pulse prior to him taking Digoxin, which the Court has already addressed.  That is,

plaintiff seems to have alleged that defendants were attempting to hide the fact that he

had a slow pulse rate, to avoid having to take his pulse prior to giving him Digoxin.

Plaintiff, though, was always capable of taking his own pulse, and could have declined

to take his Digoxin dose if his pulse rate was below sixty bpm.  Additionally, plaintiff has

submitted no medical evidence to indicate that he has actually been diagnosed as

having a dangerously slow heart rate.  As far as the Court is aware, the mere fact that

plaintiff's pulse rate was below 60 bpm on certain occasions would not necessarily

mean that Alves's statements in 2005 were false.  Finally, the only allegedly false

medical records which plaintiff submitted concerning his pulse, in connection with this

application (*See*, Exhibits to [#85]), date back to 2003 and 2005, and consequently,

plaintiff has not provided evidence that he is currently in any imminent danger due to

alleged false entries in his medical record. *See, Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.") (citation and internal quotation marks omitted).

CONCLUSION

For all of the foregoing reasons, plaintiff's application [#40] for injunctive relief is granted in part and denied in part. The application is granted in part as follows: To the extent that they are not already doing so, defendants are to provide plaintiff with a low-sodium diet for as long as medically necessary. Otherwise, the application is denied.

So Ordered.

Dated:        Rochester, New York
              February 8, 2007

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge